State v. Eubanks.

---

## THE STATE v. EUBANKS, Appellant.

**Division Two, November 20, 1906.**

1. **CARNAL KNOWLEDGE STATUTE CONSTITUTIONAL.** The carnal knowledge statute (sec. 1838, R. S. 1899) is constitutional. (Following State v. Hamey, 168 Mo. 167.)

2. **FELONY: What Is: Punishment.** Where the statute fixes the punishment of an offense at imprisonment in the penitentiary, imprisonment in the county jail, or a fine, the offense is a felony, no matter what punishment the court may impose after conviction.

Appeal from Taney Circuit Court.—*Hon. John T. Moore*, Judge.

AFFIRMED.

*Burkhead & Clarke* for appellant.

The information is based upon section 1838, Revised Statutes 1899, which appellant claims is out of line with the trend and spirit of the laws of Missouri, and unconstitutional. Secs. 22, 28 and 30, art. 2, Constitution; Smart v. Kimball, 43 Mich. 448; State v. Hamey, 168 Mo. 218.

*Herbert S. Hadley,* Attorney-General, and *N. T. Gentry,* Assistant Attorney-General, for the State.

Defendant's assignment of error that the carnal knowledge statute, section 1838, is unconstitutional has been decided adversely to his contention. State v. Hamey, 168 Mo. 167.

GANTT, J.—On the 17th of March, 1905, the prosecuting attorney of Taney county filed an information with the clerk of the circuit court of that county, charging the defendant with carnally knowing one Callie Lewis, an unmarried female of previously chaste character, between the ages of fourteen and eighteen years. Accompanying said information there was filed an affidavit of Callie Lewis, which charged defendant with the same offense. At the October term, 1905, defendant was tried and convicted; whereupon, the court assessed his punishment at two years in the penitentiary. After his motion for a new trial and in arrest of judgment had been overruled, defendant was granted an appeal. The trial court made an order giving defendant leave to file his bill of exceptions within ninety days from October 27, 1905. Afterwards, the defendant filed an order extending the time thirty days for filing same, said order having been dated and signed by the trial judge on the 25th of January, 1906, which was within the time. Within the thirty days the bill of exceptions was signed by the trial judge and filed with the clerk.

The State's evidence tended to prove that prosecutrix lived with her mother in Taney county, near Walnut Shade. On January 29, 1904, the father of prosecutrix died, and defendant, who had begun to keep company with her a little while before, kept up his visits regularly thereafter. About the first of March, 1904, defendant and prosecutrix had sexual intercourse, which was continued at intervals till in June, when it

was discovered that she was pregnant. In July prosecutrix went to Kansas City to visit a sister of defendant. From Kansas City she went out in to Kansas to visit her relatives, and did not return to Taney county till the following February. Defendant followed prosecutrix to Kansas City, remaining there for some time after she had left the city. While in Kansas City defendant wrote the following letter to prosecutrix, which was identified and read in evidence:

"Kansas City, Mo., Aug. 19, 1904.
"Miss Callie Lewis:

"My Dear Sweetheart—I now take the pleasure of answering your most kind and highly appreciated letter that I received yesterday evening. Was truely glad to hear from you once more. Well, Callie, I have been very sick since you left; you left Saturday night and I took sick Sunday night, and have been sick ever since, but feel better now. I had three doctors with me. The folks all got scared and thought I was going to die the the other night.

"Well, Callie, you spoke about me writing to Stella Moore; the other evening when I was sick Clara began to laugh and told me that that letter that I rote Stella Moore was still laying in the shelf, so I told her it could just lay there and rot, and she said that was right, and I think so to.

"Well, Callie, was sorry to hear that your medicine hadn't did you any good yet, but don't get discoredged, for I no it will if you just take it good, and, of course, you will.

"Tell Jane and Ed hello and kiss Ross for me and don't forget to kiss Callie for me.

"Have you told the folks about it yet, and how did they take it? Have you saw Fannie and Allen yet and are they married; if they are married how many babies have they? Clara said tell you to rite to her and tell

her how you are getting along. Well, as news is scarce I will ring off, so good by as ever yours.

"Sincerely,

"QUINNIE EUBANKS.

"Direct your letter to the house, for I don't know whether I will work any more on the carr or not as the Doc't told me that was what made me sick."

At the time of having these improper relations, prosecutrix was fifteen years old, and defendant was nineteen. The mother of prosecutrix testified to her age, and also to the fact that no other young men or boys had kept company with prosecutrix. She also testified that, just prior to the time of filing the complaint in this case, the defendant and a friend of his tried to settle the case for forty dollars. The mother further testified that on March 12, 1905, prosecutrix gave birth to a child, which was born dead, and that it was a nine months child. Judge Craig, A. L. Weatherman and Mrs. George Patterson all testified that they were neighbors, and had been acquainted with prosecutrix most of her life; and that her general reputation for chastity was good prior to this trouble. And prosecutrix testified positively that no one, except defendant, had ever had intercourse with her.

The defendant admitted associating with prosecutrix, and also admitted his intimacy with her at the times and places as testified to by her. He further testified that he had heard from "all the boys" that she was not a virtuous girl, and heard that before he began going with her. He introduced some evidence which tended to sustain him in part, but one of his witnesses, C. C. Blancit, testified that her general reputation was good, and that he had never heard a word against her. Defendant's witness, Milton Chandler, at first denied having had intercourse with prosecutrix, but afterwards admitted that he "believed he had." Being rather urgently requested, he stated that their

relations were had in Taney county the fall before the confinement of prosecutrix. Defendant testified that he was nineteen at the times above mentioned.

In rebuttal, it was shown by prosecutrix and her mother that prosecutrix left Taney county in July, and did not return till February, and that her child was born on March 12. Prosecutrix denied having had intercourse with Milton Chandler, and testified, as above stated, that she was not in Taney county at said time.

At the close of all the evidence the court gave the usual and oft-approved instructions on reasonable doubt, the right of the defendant to testify in his own behalf, and the credibility of the witnesses, and on the essentials of the crime instructed the jury that it devolved upon the State to prove by the evidence beyond a reasonable doubt that Callie Lewis was a girl of previous chaste character up until the time of the alleged crime; that they must find that Callie Lewis was between the age of fourteen years and eighteen years and that defendant was over the age of sixteen years, and then gave the following instruction:

"2. The court instructs the jury that if you find from the evidence that Quinnie Eubanks, in the county of Taney and State of Missouri, on or about the 5th day of June, 1904, or at any time within three years before the filing of the information, to-wit, March ·17, 1905, did unlawfully and feloniously have carnal intercourse with Callie Lewis, and you further find that Callie Lewis was between the years of fourteen years and eighteen years, and you further find that the said Callie Lewis was of previous chaste character, and you further find that the defendant, Quinnie Eubanks, was over the age of 16 years at the time of the commission of the offense, you will find the defendant guilty and so say by your verdict."

Two grounds only are urged for a reversal of this judgment.

First, that section 1838, Revised Statutes 1899, is

unconstitutional in that it denies a trial by jury in which the jury are allowed to assess the punishment of the defendant.

I. Defendant suggests no ground or reason for holding this section unconstitutional that was not presented in the able and exhaustive discussion of Judge SHERWOOD in his dissenting opinion in State v. Hamey, 168 Mo. 167. The Court in Banc in that case held the section constitutional and we see no reason for changing our views as to its validity.

II. The suggestion is made that owing to the fact that the punishment may be either by imprisonment in the penitentiary or in the county jail or by a fine, it is a felony if the punishment is assessed at imprisonment in the penitentiary but a misdemeanor only if the defendant's punishment is fixed at imprisonment in the county jail or by a fine. The statute is its own answer to this contention. It is a felony whatever punishment the court imposes after conviction. We hold that the court committed no error in holding the statute constitutional and the exceptions of the defendant are without merit.

The judgment is affirmed.

*Burgess, P. J.,* and *Fox, J.,* concur.